**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

MELVA MAYES                                    CIVIL ACTION

VERSUS                                         NO. 13-5474

PTP INVESTMENTS, LLC                           SECTION "B"(1)

<u>ORDER AND REASONS</u>

Plaintiff Melva Mayes has paraplegia and is confined to a
wheelchair. She brought the instant suit for declaratory and
injunctive relief against PTP Investment, L.L.C. (PTP) under the
Americans With Disabilities Act (ADA). 42 U.S.C. § 12181 *et seq*.
She claims that she has visited the Rally's Hamburgers located
on property owned by PTP numerous times and intends to again in
the future. Complaint, (Rec. Doc. No. 1 at ¶ 12). She alleges
that she experienced serious difficulties in accessing the
location because of architectural barriers, namely a lack of
parking for persons with disabilities; lack of an accessible
route from the parking lot to the restaurant; lack of proper
signage in the parking lot; lack of a curb cut; lack of signage
on restroom doors; a narrow restroom door; noncompliant ramp
access; and lack of disability seating. (*Id.* at ¶ 16).

PTP subsequently filed a third-party complaint against Ronald
Stevens, JCS Drive-Thru Restaurants, Inc., and Checkers Drive-In
Restaurants, Inc. (collectively "Third-Party Defendants"),
claiming they are responsible for responding to Mayes'

1

allegations. Third-Party Defendants now seek dismissal, claiming Mayes lacks standing and, separately, that Mayes has failed to state claim.[1]

Accordingly, and for the reasons articulated below, **IT IS ORDERED** that Third-Party Defendants' Motion to Dismiss (Rec. Doc. No. 17) is **DENIED**.

## I. Standing

Standing is an absolute requirement for federal jurisdiction, and without standing a plaintiff's claim may not proceed. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010); *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999). For a plaintiff to establish standing, three elements must be met:

> First, the plaintiff must have suffered an injury in fact—
> an invasion of a legally protected interest which is (a)
> concrete and particularized, and (b) actual or imminent,
> not conjectural or hypothetical. Second, there must be a
> causal connection between the injury and the conduct
> complained of—the injury has to be fairly traceable to the
> challenged action of the defendant, and not the result of
> the independent action of some third party not before the
> court. Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a
> favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)
(internal citations and quotations omitted).

A plaintiff seeking injunctive relief bears the additional burden of establishing a "real or immediate threat that the

---

[1] PTP has made no filings on the issue of dismissal.

plaintiff will be wronged" in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Where standing is challenged as a means of attacking the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), as is the case here, the party asserting jurisdiction bears the burden of establishing a basis for jurisdiction. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). But all jurisdictionally pled facts are to be accepted as true until challenged and dismissal "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his [or her] claim that would entitle plaintiff to relief." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When jurisdictional facts are challenged the court may resolve the challenge by looking to (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming* at 161. However, the burden to establish jurisdiction at the 12(b)(1) stage is not demanding. In cases where "issues of fact are central both to subject matter jurisdiction and the claims on the merits . . . the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of Navy*, 392 F.3d 147

(5th Cir. 2004); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (stating "[i]t is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . .").

Challenges to subject matter jurisdiction brought under 12(b)(1) are to be distinguished from challenges under 12(b)(6) for failure to state a claim. Under 12(b)(6), the Court must determine "whether a cognizable legal claim has been stated." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed.)  A motion under 12(b)(1), by contrast, only requires a determination as to "whether the plaintiff has a right to be in the particular court." *Id*. Thus, when a "challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action . . . is to find that jurisdiction exists and deal with the objections as a direct attack on the merits" under either a Rule 12(b)(6) motion or Rule 56 summary judgment motion. *Montez*, 392 F.3d at 150 (quoting *Williamson v. Tucker* , 645 F.2d 404, 415 (5th Cir. 1981)). To proceed otherwise would allow a party to "indirectly" challenge the merits of a case, and fail to provide "protection[s] to the plaintiff who in truth is facing a challenge to the validity of his claim." *Williamson*, 645 at 415; *see also Oneida Indian Nation of N. Y. State v. Oneida*

*Cnty., New York*, 414 U.S. 661, 666-67 (1974) (dismissal for lack of subject matter jurisdiction improper when plaintiff's "assertion that they had a federal right . . . cannot be said to be so insubstantial, implausible, [or] foreclosed by prior decisions . . .").

Third-Party Defendants argue that Mayes lacks standing to pursue injunctive relief because she has not alleged a threat of imminent future injury. Specifically, Third-Party Defendants contend that Mayes has failed to establish her intent to return to the Rally's Hamburgers in the future. They dismiss her as a mere "tester", who seeks to sue businesses to force compliance with the ADA. This contention is unavailing, and ignores the actual jurisdictional facts pled.

Mayes stated specifically in her Complaint that she lives near Third-Party Defendants' business[2]; that she has visited the business numerous times in the past and has experienced the architectural barriers firsthand; and she would like to visit the business again but is deterred by the architectural barriers. Complaint, (Rec. Doc. No. 1 at ¶¶ 12-15). These

---

[2] Third-Party Defendants dispute this contention, pointing to previous lawsuits filed by Mayes where she stated she lived in St. Tammany Parish rather than Jefferson Parish, where the business is located. The Court does not find this fact to bare heavily on the standing analysis, since a resident of St. Tammany Parish might choose to visit restaurants in Jefferson Parish on a regular basis such that they are injured by Jefferson Parish businesses failing to comply with the ADA. But regardless, Mayes clarified in her Opposition to the instant motion that she has since moved to Jefferson Parish. Affidavit of Melva Mayes, (Rec. Doc. No. 18-1 at ¶ 4).

jurisdictionally pled facts are accepted as true, and provide a viable basis for standing.

Third-Party Defendants have provided no evidence beyond the Complaint that the Court finds persuasive to challenge Mayes' sincerity that she intends to revisit the location. Third-Party Defendants rely on resolutions of fact not proper on a Motion to Dismiss under Rule 12(b)(1) given the existing record. These arguments are discussed further below.

First, Third-Party Defendants claim Mayes is a tester and therefore lacks standing. "Testers are qualified individuals with disabilities who visit places of public accommodation to determine their compliance with Title III" of the ADA. Kelly Johnson, *Testers Standing Up for Title III of the ADA*, 59 Case W. Res. L. Rev. 683, 685 (2009). The Court does not find Mayes to be merely a tester. She has visited the location numerous times in the past and intends to again in the future for the purpose of patronizing Third-Party Defendants' business. Although Mayes claims she plans to visit the location as a tester in the future, she states specifically that service as a tester is independent from her wanting to visit again as a customer. Complaint, (Rec. Doc. No. 1 at ¶¶ 20).

Even accepting Third-Party Defendants argument that Mayes seeks to proceed as a tester to monitor ADA compliance, such testers may still satisfy the standing requirement. *See*

*Gilkerson v. Chasewood Bank*, 2014 WL 805996 (S.D. Tex. Feb. 27, 2014) (finding where plaintiff alleged she went to ATM location as both a tester and a patron and would continue to do so standing requirement was satisfied); *Cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (holding that testers may qualify for standing under the Fair Housing Act). The Fifth Circuit has not yet addressed the question of testers directly in the context of the ADA public accommodation provision. However, the Tenth and Eleventh Circuits have held that a tester can satisfy the standing requirement under the ADA for injunctive relief. *Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013).

Third-Party Defendants' corollary argument that Mayes' claim to return to the restaurant lacks specificity is also rejected. ADA plaintiffs need not state a specific time or reason for wanting to visit an establishment in the future to have standing. *See Tatum v. Bd. of Supe'rs for Univ. of Louisiana Sys.*, 2014 WL 1250102 (E.D. La. Mar. 26, 2014) (holding plaintiff established standing where alleged barriers hampered plaintiff's ability to access and enjoy ADA covered accommodations). They additionally "need not engage in futile gestures before seeking an injunction," such as repeatedly going to an inaccessible location. *Frame v. City of Arlington*, 657

F.3d 215, 236 (5th Cir. 2011); 42 U.S.C. § 12188(a)(1) ("[A] person with a disability [need not] engage in a futile gesture if such person has actual notice that a person or organization covered by [the ADA] does not intend to comply with its provisions"). Rather, at most all that is required to confer standing is a specific intention to visit the business in the future and take advantage of the changes sought. *See Plumley v. Landmark Chevrolet, Inc*., 122 F.3d 308, 312 (5th Cir. 1997) (ADA plaintiff seeking injunction must "show that there is reason to believe that he would directly benefit [from] the equitable relief sought. In other words, a plaintiff must face a threat of present or future harm."); *Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 709 (W.D. Tex. 2010) (holding "in an ADA Title III case, the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant")[3]; *Cf.*

---

[3] The *Betancourt* court additionally recognized numerous injunction affirmances under the ADA by both the Fifth Circuit and the Supreme Court where no record evidence was presented on when, if ever, the plaintiff intended to revisit the defendant business. *Betancourt* at 706-708. This suggests the future intent to return requirement is flexible and minimally demanding. *See also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008) ("Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III to bring his claim for injunctive relief forward.")

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528
U.S. 167, 183 (2000) (finding plaintiffs adequately established
standing to sue under the Clean Water Act where they lived near
river and visited it in the past but were deterred from doing so
in the future because of defendants' alleged conduct). This
standing requirement is more than met by Mayes, given her close
proximity to the restaurant and her intention to visit the
restaurant in the future.

Third-Party Defendants also argue that Mayes' assertion
that she intends to visit the location in the future is suspect
because she has filed ten other ADA lawsuits against different
defendants since 2012 with nearly identical factual allegations.
While very suspicious, the fact that a plaintiff has filed
suits in the past alleging similar disparate treatment is not a
basis for declining jurisdiction. *See D'Lil v. Best W. Encina
Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (overruling
district court's dismissal of plaintiff's suit where plaintiff
had been involved in 60 past ADA suits). At this early pleadings
stage, these rebuttable factual allegations are presumed true –
for now.

In reviewing ADA standing challenges, the Court is
cognizant of the fact that Congress has found that
discrimination against persons with disabilities "persists in
such critical areas as . . . public accommodations" and

"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural . . . barriers [and] failure to make modifications to existing facilities and practices . . ." 42 U.S.C. § 12101 (3), (5). Those finding were reaffirmed with the ADA Amendments Act Of 2008. PL 110-325, September 25, 2008, 122 Stat 3553. Given this pervasive level of nationwide discrimination, the Court cannot accept Third-Party Defendants' argument that ten suits over two years by one plaintiff suggests the lack of a particularized injury.

As other courts have recognized, a high number of suits by an individual plaintiff is a result of the ADA's private enforcement scheme. The Ninth Circuit has found:

> [T]he ADA does not permit private plaintiffs to seek damages, and limits the relief they may seek to injunctions and attorneys' fees. [The] the unavailability of damages reduces or removes the incentive for most disabled persons who are injured by inaccessible places of public accommodation to bring suit under the ADA. As a result, most ADA suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled. District courts should not condemn such serial litigation as vexatious as a matter of course. For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.

*Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061–62 (9th Cir. 2007) (internal citations omitted)[4]; *see also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1326 (11th Cir. 2013) ("It is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights."). Thus, the Court finds no evidence that Mayes has filed ADA suits in a frivolous manner, and no justification for denying her standing here based on past litigation.

Third-Party Defendants point to two cases that warrant further discussion. First, Third-Party Defendants rely heavily in their Motion on *Payne v. Sears, Roebuck & Co.*, 2012 WL 1965389 (E.D.N.C. May 31, 2012). There, the United States District Court for the Eastern District of North Carolina dismissed an ADA plaintiff's claim for lack of standing because her intent to return to the business was speculative if not doubtful. *Id*. at *6. The facts in *Payne* are distinguishable from the instant case. There, the plaintiff was a resident of Florida, while the defendant business was located in North Carolina. *Id*. at *1. The court found plaintiff did not suffer the level of injury required to establish standing for

---

[4] The *Molski* court ultimately upheld a determination that Molski was a vexatious litigant, but he had filed over 400 suits under the ADA and was found to routinely exaggerate facts in his favor. *Molski* at 1050, 1062.

injunctive relief because her distant proximity to the location failed to establish an imminent threat that she would be harmed again. *Id*. at *7. Mayes is not several states removed from Third-Party Defendants' business, but instead lives relatively speaking in a nearby locality. She arguably appears to suffer imminent harm from an inability to patronize the restaurant without encountering structural barriers. Thus, *Payne* has little application to the instant case at this stage.

The *Payne* court additionally applied a four factor test to determine if the plaintiff had standing: (1) the proximity of the plaintiff's residence to the alleged offending establishment; (2) the plaintiff's past patronage of the establishment; (3) the definitiveness of the plaintiff's plan to return to the establishment; and (4) whether the plaintiff frequently travels nearby. *Payne* at *3. Third-Party Defendants urge the Court to adopt the same test here.

While several district courts have looked to this test, the Fifth Circuit has not adopted it. *See Tatum*, 2014 WL 1250102 at *3. Judge Affick recently declined to accept the factors as governing. *Id.* At least one court, the United States District Court for the District of Maine, has rejected use of the test prior to trial – concluding the factors rely too heavily on fact finding not appropriate at the motions practice stage. *Fiedler v. Ocean Properties, Ltd.*, 683 F. Supp. 2d 57, 72 (D. Me. 2010).

The liberal pleading standard at the 12(b)(1) stage, *Choice Inc*, 691 F.3d at 714, coupled with the broad standing provisions of the ADA, *see McCoy v. Texas Dep't of Criminal Justice*, 2006 WL 2331055 at *6 (S.D. Tex. Aug. 9, 2006), suggest that such a rigorous fact dependent test at the motion to dismiss phase is not appropriate. *See also* 42 U.S.C. § 12188(a)(1)(ADA remedies are available to "*any person* who is being subjected to discrimination on the basis of disability in violation of [the ADA] or who has reasonable grounds for believing that such person is about to be subjected to discrimination . . .") (emphasis added). While the factors may be useful at trial, they rely too heavily on fact determinations and credibility findings that are improper at this juncture.

Lastly, Third-Party Defendants point the Court to *Mayes v. Jason Associates*, Civil Action No. 12-2773 (E.D.L.A.) — one of the prior suits brought by Mayes referenced above. Third-Party Defendants assert that "[t]here, Judge Kurt Engelhardt dismissed the boilerplate Complaint filed by Mayes, which is virtually identical to the Complaint filed against PTP here, for lack of jurisdiction." (Rec. Doc. No. 17-1 at 7). Counsel for Third-Party Defendants has either not carefully read Judge Engelhardt's order, or misconstrues the holding. Judge Engelhardt in fact dismissed Mayes' claims because her attorney failed to timely respond to defendant's motion to dismiss. *Jason*

*Associates*, Civil Action No. 12-2773 (E.D.L.A.) (Rec. Doc. No. 15). The order contains no jurisdictional analysis. Thus, without more, it has no precedential value.[5]

## II. Failure to State a Claim – FRCP 12(b)(6)

When reviewing a motion to dismiss for failure to state a claim, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal quotations omitted).

Third-Party Defendants seek dismissal of Mayes' accommodation claim at paragraph 17 of her Complaint, alleging that she has failed to identify particularly what auxiliary aid or services were required but not provided. The Court disagrees. Mayes has properly stated a claim for discrimination under the ADA and the need for some type of accommodation to remedy the

---

[5] Counsel's claim that Mayes' Complaint contains boilerplate language is also not accepted. Third-Party Defendants' counsel, for their part, have copied, word for word, almost the entirety of the Motion to Dismiss filed in *Jason Associates* – which was submitted by different attorneys who are not members of Third-Party Defendants counsels' firm. *Compare* (Rec. Doc. No. 17) *with Jason Associates*, Civil Action No. 12-2773 (E.D.L.A.) (Rec. Doc. No. 9).

barriers at the location.[6] The exact aid required to comply with the ADA, if any beyond the removal of architectural barriers, likely requires discovery. Therefore the claim is not subject to dismissal at the 12(b)(6) stage.

Accordingly, and for the reasons articulated above, **IT IS ORDERED** that Third-Party Defendants' Motion to Dismiss (Rec. Doc. No. 17) is **DENIED**.


New Orleans, Louisiana, this 21st day of May, 2014.

_____

UNITED STATES DISTRICT JUDGE

---

[6] Other than their jurisdictional challenge, Third-Party Defendants do not challenge this fact on the merits.

15